Vermont Superior Court
Filed 12/26/23
Caledonia Unit



VERMONT SUPERIOR COURT

Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org

CIVIL DIVISION

Case No. 23-CV-02811

| Tyler Benoit v. Vermont Department of Corrections |
| --- |

# FINDINGS, CONCLUSIONS, AND JUDGMENT

This is an appeal under Rule 74 and 28 V.S.A. § 724 concerning Petitioner Benoit's case staffing and the Department of Corrections' determination to revoke his eligibility for community supervised furlough for two years. The Court held a bench trial in this matter on December 18, 2023. No new evidence was presented. Both Petitioner and Respondent Department of Corrections offered arguments based on the administrative record.

In support of his appeal, Petitioner made three primary arguments. First, he contends that the administrative record is insufficient to support a finding that he violated the terms of his furlough. Second, he argues that he should not be labeled as a high risk offender but should be classified as a medium risk offender based on a blend of the various behavioral assessments that the Department has given him. Third, even if the Court sustains the finding of furlough violations and the high risk classification, this should be considered his first offense because of the one-year elapse between the present revocation and his last revocation in accord with Rule 430.11. The Department disagrees with all three positions and seeks an outright denial of Benoit's appeal.

The Court does not find support in the record for Benoit's arguments. While a close reading of the relevant passages of Department Policy 430.11 shows that both Benoit's and the Department's proffered interpretations have some reasonable foundation, the Department's interpretation is both more consistent with the whole of the regulation and consistent with their discretion. As explained below, the appeal is **Affirmed.**

## Standards of Review

The present appeal is a de novo review of the Department's case staffing record. 28 V.S.A. § 724(c)(1). By statute, the Court's review is limited to "determine whether the decision to interrupt or revoke an offender's community supervision furlough status was an abuse of discretion by the Department . . . ." Id. at (c)(2). An abuse of discretion in the decision to revoke or interrupt furlough is presumed for any period greater than 90 days for a technical violation unless:

> (A) The offender's risk to reoffend can no longer be adequately controlled in the community, and no other method to control noncompliance is suitable.

> (B) The violation or pattern of violations indicate the offender poses a danger to others.

> (C) The offender's violation is absconding from community supervision furlough. As used in this subdivision, "absconding" means: based on the criteria set forth in subdivision (d)(2) of this section.

28 V.S.A. § 724(d)(2).

In this case, the Department has not sought to dismiss the complaint as a non-technical violation constituting a new crime as defined in Section 724(d)(1). Nor is there evidence to suggest an absconding charge under Section 724(d)(2)(C). Instead, the sole question on appeal is whether the record supports the factual basis for the furlough revocation, whether the Department applied its discretion properly in labeling Petitioner a high-risk offender, and whether the basis for the interrupt constituted a first or second violation with the one-year period the Department uses to measure infractions.

## Background

Benoit is currently incarcerated as the result of several convictions, the most relevant being sexual assault of a victim under age 16 that was known to him. Since his incarceration, Benoit has participated in several programs and participated in community supervised furlough until August 9, 2021 when he was suspended and given a one-year furlough interrupt based on his absconding from supervision. Benoit was released for his most recent furlough tenure around November 2022. As part of this furlough release, Benoit agreed to adhere to several terms and

conditions.as part of this furlough. These included several conditions focused on minimizing his contact with minors and included the following conditions:

> SC20. I will not associate with any person identified by my supervising officer as someone to whom I am an active risk or who may be an active risk to me (e.g., someone actively engaged in criminal behavior).

> SC36D. l will not initiate or maintain contact with female persons under the age of 1 8 years, unless otherwise approved in advance and in writing by my supervising officer, or designee. Said contact may require the accompaniment of a responsible adult and approval by my supervising officer, or designee. Contact includes any communications through electronic media encompassing, but not limited to, email, internet contact, texting, tweeting, and communications via social media.

Benoit, upon returning to furlough, had been told by his probation officer that he was specifically not to contact LC, the 8-year old daughter of his ex-girlfriend. In January 2023, the Department learned that Benoit had been in contact with LC, had initiated contact with LC, and had extensive texts and conversations with her. The Department sanctioned Benoit for this contact, put him on a 24-hour curfew and electronic monitoring, and directed him to have no further contact with LC or LC's mother.

In May 2023, Benoit admitted that he had continued to have and to initiate contact with LC via phone messages, that he had visited with LC by going to her mother's house, and that LC had snuck over to Benoit's house on several occasions. These contacts were direct violations of the terms of his furlough and followed both specific directions from his probation officer and a prior sanction. The breach of these conditions can only be concluded to be knowing and intentional and done despite clear direction by the Department to cease such contacts.

*Factual Sufficiency of the Record for Revocation*

While Benoit makes much of the fact that the record does not include the content of these communications, this argument ignores the point of the communication and condition. Benoit has a history of sexual abuse of minors. As part of his conditions, he is required to minimize his contact with minors and to effectively avoid contact with them. For example, one condition of his furlough contains a restriction that he not obtain employment in a job that provides services to minors. The purpose of these conditions is not to stop specific types of communications, it is to prevent them entirely. The idea is that the Department should not be obligated to sift through

permissible and impermissible communications between Benoit and minors. Such a task would likely be impossible, but it also would invite the risk that such behavior could be masked under what would appear to be anodyne conversation. Instead, the Department's conditions drew the line at the point of contact. Any contact with minors, unless allowed under the terms and conditions is not allowed. Therefore, the admission that he had contact with LC, a minor under 16 that was specifically identified as a person he was not to have contact and who Benoit had previously been sanctioned for contacting, constituted a direct and significant violation of his furlough terms and conditions.

Under Vermont Department of Corrections Rule 430.11(D), a significant violation meriting the suspension of furlough include:

> b.      Offender's behavior directly threatens or harms an identifiable person/individual;
>
> $$* \qquad * \qquad *$$
>
> e.      A pattern of risk-related behavior where previous interventions have failed to mitigate
> the risk; or
>
> f.      A pattern or history of behavior that continues after the exhaustion of lower-level technical sanctions have failed to gain offender compliance.

Id. In this case, the evidence supports a determination under any of these three categories. Therefore, the Court finds substantial evidentiary support for the Department's conclusion that Benoit's actions constituted a significant violation meriting a Notice of Suspension and ultimately a revocation of furlough. There was no abuse of discretion in determining Benoit had committed a significant violation that merited revocation of furlough, and the Department's determination on this count is **Affirmed.**

## *Rick Classification*

The next area of Benoit's appeal is his classification as a high-risk offender. Under Policy 430.11(F), an offender's risk score determines, in part, the severity of the sanction. Thus, a first-time, low risk offender is normally only sanctioned a 90-day furlough suspension for a significant violation while a high-risk offender is eligible for a one-year suspension for the same first-time significant violation.

The Department has classified Benoit as a high-risk offender. Benoit objects to this classification and points to the various risk assessment evaluations that the Department has given him. These results yield a mix of results. While his ORAS score puts him as high, his VASOR and Static 99 R scores put him as moderate/high, and his SOTIPS score ranks as moderate. These tests are evidence-based tests that measure different aspects of an offender's behavior to evaluate their risk of violence and risk to the community. *Chandler v. Pallito*, 2016 VT 104, ¶ 31. These tests are not definitive or dispositive to the question of risk, and like all tests, they can yield inaccurate results if it includes improper data and considerations. *In re Bruyette*, 2022 VT 3, ¶¶ 7–9. Current Corrections Policy 430.11 does not define how the risk assessment scores are compiled and factored into a particular classification for purposes of imposing sanctions on offenders who have significant violations.

In lieu of such specific criteria, Benoit proposes the Court simply add up his scores and average them or select a median, which he contends should be as a moderate risk offender. This argument ignores both Policy 371 and the underlying statutory authority of 28 V.S.A. §§ 1, 101(1), 102, 601, and 721, which give the Department broad authority to make risk assessments and classifications, and in its discretion how such tools, like the evidence-based tests, are incorporated into a final risk assessment determination. *Plum Creek Maine Timberlands, LLC v. Vermont Department of Forests, Parks & Recreation*, 2016 VT 103, ¶30 ("Where there are questions about "complicated methodologies within an agency's expertise" a reviewing court, even in the context of a de novo hearing, must give deference to the agency's decision.") (citing *In re Appeal of ANR Permits in Lowell Mountain Wind Project*, 2014 VT 50, ¶ 16).

In this case, the Court is obliged to defer to the Department on how risk assessment scores are incorporated into a particular risk classification. In this case, the range of scores is not inconsistent with a high risk classification. While it can argued that these score lend themselves equally to a determination of moderate risk, *Plum Creek* and its progeny instruct the Court not to substitute its view on such an issue where there is (1) authority for the agency to act; (2) no clear statute, rule, or policy to limit the agency's discretion or frame an abuse of discretion analysis; and (3) where the issue involves a technical or complicated methodology that falls within the agency's expertise. All three of these elements are present here, and the Court will defer to this determination.

Based on the foregoing, Benoit's appeal of his risk classification as a high-risk offender is denied, and the Department's classification is **Affirmed.**

*Level of Violation*

Benoit's final issue for appeal concerns the Department's determination that his January to May actions constituted a second significant violation within a single year. The Department came to this conclusion based on the fact that while the prior violation occurred on August 9, 2021, the one-year time period had been tolled by Benoit's return to the facility for one year.

The relevant section addressing this determination is found in Corrections Policy 430.11 (F)(1)(d), which states: "Any subsequent finding of a signification [sic]violation within one year of a previous significant violation will be considered at the next violation level," and Section 430.11(F)(1)(e), which states: "An offender who completes one year of compliant behavior will be reset to violation level #1." These provisions are both relevant because subsection (d) sets out the rule for applying the level of sanction. If the offense takes place within one-year of a prior sanction, then the Department will apply the next sanction level. Subsection (e) defines when that year ends, and when the sanctions are re-set to level #1. This occurs only when there is a year of "compliant behavior."

Benoit contends that the language in Policy 430.11(F)(1)(d), which was drafted and adopted by the Department, constitutes a calendar-year standard as it makes no provision for tolling or specification that the year only applies to time spent on furlough. While this position is grounded in both the plain language of subsection (d), it is also consistent with the reality that an offender whose furlough is revoked faces. Offenders who return to a correctional facility are still subject to discipline, and Benoit through his counsel pointed out several examples of situations where an offender received an additional sanction while in the facility for discipline issues. ). See, e.g., McGlynn v. Deml, 23-CV-01632 (appealing future case staffing decisions following discipline incidents in the facility that occurred within one-year of a furlough revocation).

At the same time, Benoit's interpretation omits the language of Subsection (e) and the language "one year of compliant behavior." When construing a statute or rule, the Court must read and construe together the whole of a rule. *State v. A.P.*, 2021 VT 90, ¶ 12. When read together, the intent of this section is limited to periods where there can be "compliant behavior."

Given that Policy 430.11 deals exclusively with furlough violations, it is consistent with the language and intent of the regulations as a whole to read subsection (d) as part of the time when the individual is on furlough and subject to the terms and conditions of the furlough provisions. Based on this interpretation, the Court concludes that when read as a whole Section 430.11(F) only applies to periods when the offender is on furlough and subject its terms and conditions. This interpretations avoids a situation where a high-risk offender could incur significant violations over a series of sequential furloughs but never incur the graduated levels of sanctions in Subsection (F) because the interruptions are for one-year.

The Court recognizes that Benoit's interpretation is not without sense and persuasive reason, but it is ultimately not prevailing, in part, because the different nature of sanctions inside and outside the facility. Inside the facility, an offender is subject to significantly more restrictions and more external controls. On furlough, the offender has greater freedom and leeway in his behavior. It is not only reasonable that such different situations fall under different scrutiny, but it is also reasonable that one form should not clear an offender's record in the other realm. Simply because an inmate has good behavior in the facility does not resolve these issues that arise on furlough.

Finally, there is, once again, the issue of deference. The Department's interpretation is effectively a policy decision. By tolling the clock when an offender is not on furlough and not capable of compliant behavior, the Department is applying its authority to make a distinction between in-facility discipline and furlough-based discipline. Like the risk categorization, this determination falls within the discretion of the Department and its realm of expertise, namely the control, classification, and management of offenders under its custody. *Plum Creek*, 2016 VT 103, at ¶¶ 2930. As noted above, this deference arises because the interpretation championed by the Department is a reasonable interpretation and is, therefore, due deference. While Benoit has put forward a reasonable counter-interpretation of "calendar year" and has noted that his interpretation is only possible because of the Department's drafting, which should be read against the Department, this discrepancy begs the question for a deference analysis. The only conflict that arises is if the Court adopts Benoit's interpretation, which while possible is not the only possible interpretation and is, more importantly, precisely what he seeks to prove. The

Court finds this reasoning insufficient to avoid deference and to establish the alternative interpretation championed by Benoit.

Under this analysis, the Court concludes that the Department's is the better supported interpretation in that it is consistent with both the plain language and the broader intent and language of the immediate subsection and the larger Policy as well as consistent with the deference owed to the Department's expertise and methodologies. For these reasons, Benoit's final argument is denied, and the Department is **Affirmed.**

## **ORDER**

Based on the foregoing, Appellant Benoit's appeal is **Denied.** The 2-year furlough interruption is **Affirmed.**

Electronically signed on 12/22/2023 9:18 AM pursuant to V.R.E.F. 9(d)

_____

Daniel Richardson
Superior Court Judge

Electronically signed pursuant to V.R.E.F. 9(d)

_____

Merle L. Haskins
Assistant Superior Court Judge